BUKKY, APPELLEE, *v.* THE PAINESVILLE TELEGRAPH & LAKE GEAUGA PRINTING COMPANY ET AL., APPELLANTS.

(No. 80-1596—Decided November 10, 1981.)

*Messrs. Thrasher, Dinsmore & Dolan, Mr. David M. Ondrey* and *Mr. Dale H. Markowitz,* for appellee.

*Messrs. Gallagher, Sharp, Fulton, Norman & Mollison, Mr. John B. Robertson* and *Ms. Beverly A. Harris,* for appellants.

CLIFFORD F. BROWN, J.   The issue herein is the quantum of evidence that a public official as plaintiff in a libel action must produce in order to withstand defendant's motion for summary judgment.

The standard in this area of the law has been articulated by the United States Supreme Court in *New York Times Co.* v. *Sullivan,* (1964), 376 U. S. 254; *St. Amant* v. *Thompson* (1968), 390 U. S. 727; and by this court in *Dupler* v. *Mansfield Journal* (1980), 64 Ohio St. 2d 116, paragraph two of the syllabus, as follows:

"In considering defendant's motion for summary judgment in a libel action brought by a public official, if the court finds that there is no genuine issue of material fact from which a reasonable jury could find actual malice with convincing clarity, it must enter judgment for defendant."

The rationale for this standard is supported by *Gertz* v. *Robert Welsh, Inc.* (1974), 418 U. S. 323; *Rosenbloom* v. *Metromedia Inc.* (1971), 403 U. S. 29; *Greenbelt Cooperative Publishing Assn., Inc.* v. *Bresler* (1970), 398 U. S. 6, 10; *Beckly Newspapers Corp.* v. *Hanks* (1967), 389 U. S. 81; *Garrison* v. *Louisiana* (1964), 379 U. S. 64, 74; *Washington Post Co.* v. *Keough* (C.A. D.C. 1966), 365 F. 2d 965, 968; *Driscoll* v. *Block* (1965), 3 Ohio App. 2d 351; *Nader* v. *de Toledano* (C.A. D.C. 1979), 408 A. 2d 31.

Measured by the foregoing standard as established by au-

thoritative legal precedent, and adhering thereto, we find that this case raises no genuine issue of material fact based on evidence from which a reasonable jury could find actual malice with convincing clarity.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY, LOCHER and KRUPANSKY, JJ., concur.

CELEBREZZE, C. J., and HOLMES, J., dissent.

CELEBREZZE, C. J., dissenting. With one judicial body blow, the court, today, effectively eliminates, as a practical remedy, the ability of any public official or public figure to prosecute a successful defamation action. Since I believe that we should balance our concern for an uninhibited, vigorous free press with a genuine awareness of a defamation plaintiff's legitimate interest in redressing wrongful injury, I respectfully dissent.

Controlling First Amendment case law in the defamation area is clear. As a public official, plaintiff, in order to recover damages for published falsehoods relating to his official conduct, must prove that the statements were made with actual malice—that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254, 279-280. See, also, *Dupler* v. *Mansfield Journal* (1980), 64 Ohio St. 2d 116, certiorari denied (1981),     U. S.    , 69 L.E. 2d 973.

The *New York Times* standard was further refined in *St. Amant* v. *Thompson* (1968), 390 U. S. 727, 731, in which the court precluded recovery by a public-figure plaintiff unless there was sufficient evidence to permit the conclusion that "the defendant in fact entertains serious doubts as to the truth of his publication."

*Herbert* v. *Lando* (1979), 441 U. S. 153, established that there is no First Amendment privilege that bars inquiry into the editorial processes of a defamation defendant, thus permitting evidentiary entry into a reporter's or editor's subjective state of mind. Now, a plaintiff may probe the beliefs, opinions,

intent and conclusions entertained by a reporter in preparing a story in order to prove the subjective libel standard articulated by the court in *St. Amant* v. *Thompson, supra.*

Applying the aforementioned constitutional principles to the case at bar, I submit that the granting of summary judgment in defendants' favor was legally unwarranted for two fundamental reasons.

First, recent precedent of the United States Supreme Court has sounded a note of caution with respect to granting summary judgment in First Amendment libel cases. Where a reporter's or editor's "state of mind" or "subjective awareness of probable falsity," motive or intent is the focal point of the case, the court has expressed some doubt as to the propriety of rendering summary judgment. In *Hutchinson* v. *Proxmire* (1979), 443 U. S. 111, 120, at fn. 9, for example, Chief Justice Burger, in discussing the *New York Times* "actual malice rule" within the context of what a defamation plaintiff had to prove in order to avoid summary judgment, stated: "Considering the nuances of the issues raised here, we are constrained to express some doubt about the so-called 'rule'. The proof of 'actual malice' calls a defendant's state of mind into question, *New York Times* v. *Sullivan,* 376 U. S. 254 (1964), and does not readily lend itself to summary disposition.***" See, also, *Herbert* v. *Lando, supra; Poller* v. *Columbia Broadcasting System* (1962), 368 U. S. 464 (state of mind should generally be a jury issue).

Second, assuming *arguendo* that summary judgment can be properly employed in libel cases, the incompleteness, ambiguity and uncertainty of the depositions and affidavits in the case at bar render summary judgment inappropriate by Civ. R. 56 standards.

As stated in *Dupler* v. *Mansfield Journal, supra,* at 121, the test for evaluating a motion for summary judgment is: "In ruling on such a motion, the court is limited to examining the evidence 'taking all permissible inferences and resolving questions of credibility in plaintiff's favor to determine whether *a reasonable jury acting reasonably could find actual malice with convincing clarity'. Nader* v. *de Toledano* (D.C. App. 1979), 408 A. 2d 31, 50. (Emphasis *sic.*)"

While recognizing that summary judgment is a "drastic

device," this court did grant summary judgment for the newspaper in *Dupler* v. *Mansfield Journal, supra,* but, in so doing, we emphasized that the record was fully developed by depositions and affidavits.

However, for the reasons that follow, I believe that the depositions, affidavits, record and operative facts in the case *sub judice* are so conflicting and confusing that this case requires a result different from the one enunciated in *Dupler* v. *Mansfield Journal, supra.*

My reading of the depositions of the reporter and editor, Barbara Silver Martin and Vernon E. Henry, in which they were asked questions about the accuracy of their informants, number of sources, reliability of sources, method of verification, authenticity of documents and manner of investigation, uncovers, by my count, no fewer than *one hundred* and *sixty-nine* answers of "I don't recall," "I don't know," "I don't remember," or words that are functionally equivalent to these responses.

The "state of mind" of the reporter and editor toward the probable truth or falsity of the article has not been, in my estimation, adequately tested. Given the present state of the record, I fail to see the foundation which would enable an appellate court to determine if the entire investigation, verification and publication process was done professionally, negligently, or recklessly.

Applying the summary judgment test of *Dupler* v. *Mansfield Journal, supra,* to the facts at bar, I submit that , in its present posture, the case presents such competing inferences, evidence and claims that, taking all permissible inferences in plaintiff's favor, a reasonable jury, acting reasonably, could very well come to the conclusion, with convincing clarity, that the reporter and editor acted with actual malice in printing the story. Stated conversely, I cannot see how anyone, at this stage in the case, could conclude that, taking all permissible inferences in plaintiff's favor, a reasonable jury, acting reasonably, could *not* find actual malice with convincing clarity. Construing all the facts in this case in a light most favorable to the plaintiff, it appears that several critical issues in the editorial process are still in dispute and are subject to varying interpretations, thus demonstrating the inappro-

priateness of granting summary judgment for the defendants.

What concerns me the most about the majority opinion is its potential sweep and the precedent it establishes. Under the majority's philosophy, a reporter or editor can publish a defamatory falsehood and then, when made a defendant in a defamation suit, enjoy virtual immunity from liability by making self-serving statements such as, "I do know that I have always been a very honest reporter, and that I have never reported anything that I did not believe to be true * * *." This is in direct contravention of *St. Amant* v. *Thompson, supra,* at 732, which states: "The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. *The finder of fact must determine whether the publication was indeed made in good faith.* Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." (Emphasis added.)

I support the concept of a vigorous free press and agree that freedoms of expression must have the "breathing space" that they need to survive. *New York Times* v. *Sullivan, supra,* at 271-272. See, also, *Garrison* v. *Louisiana* (1964), 379 U. S. 64, 74.

However, to enter summary judgment in a case like this, where no one seems to know or remember what really happened, makes a defamation action a meaningless, illusory remedy for any public official or public figure who seeks to right a wrong.

Therefore, I would reverse the granting of summary judgment in favor of the defendants and affirm the judgment[2] of the Court of Appeals.

---

[2] Although I concur with the result reached by the Court of Appeals, there is no legal justification for the language in its opinion that investigative reporting should be

52

HOLMES, J., dissenting.   It being my conclusion that this case was inappropriate for the granting of a summary judgment, I would affirm the Court of Appeals. In my view, there yet remained issues of fact pertaining to the existence of the reckless disregard of the truth in the investigation and reporting of the items contained in the subject published article.

---

held to a higher standard of accuracy than other types of reporting. *New York Times* v. *Sullivan, supra.* See, also, *St. Amant* v. *Thompson, supra; Dupler* v. *Mansfield Journal, supra.*