BURNS et al., Appellants,

v.

RICE et al., Appellees.

[Cite as *Burns v. Rice,* 157 Ohio App.3d 620, 2004-Ohio-3228.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–717.

Decided June 22, 2004.

624

Cooper & Elliott, LLC, Rex H. Elliott, Charles H. Cooper Jr. and Aaron D. Epstein, for appellants.

Porter, Wright, Morris & Arthur, LLP, Kathleen M. Trafford, Bradd N. Siegel and Constance M. Greaney, for appellee Thomas W. Rice Sr.

Richard C. Pfeiffer, Jr., City Attorney, and Glenn B. Redick, Assistant City Attorney, for appellee city of Columbus.

Carlile, Patchen & Murphy, LLP, Michael H. Igoe, H. Ritchey Hollenbaugh and Scott A. Fenton, for appellees David Sturtz, D. James Dean, and Thomas Fischer.

Squire, Sanders & Dempsey, LLP, John R. Gall and Philomena M. Dane, for appellee Gregory S. Lashutka.

PEGGY BRYANT, Judge.

{¶ 1} Plaintiffs-appellants, Walter J. Burns and Kathleen F. Burns, appeal from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Thomas W. Rice Sr., the city of Columbus (the "city"), Gregory S. Lashutka, David Sturtz, D. James Dean, and Thomas Fischer (the last four defendants being collectively referred to as the "individual defendants") on plaintiffs' claims against defendants for defamation and conspiracy to commit defamation. Because the trial court did not err in entering judgment for defendants, we affirm.

{¶ 2} Plaintiffs' defamation and conspiracy claims arise out of statements contained in a Mayoral Investigative Report (the "Report") released on June 30, 1997, that published the results of an in-depth mayoral investigation into serious allegations that Columbus Police Department ("CPD") Chief James Jackson and other command and civilian employees of the CPD engaged in official misconduct and impropriety in the operation and management of the CPD. The subjects of the investigation included plaintiff Walter Burns, who was a CPD Commander, and plaintiff Kathleen Burns, who is Walter Burns's wife and Chief Jackson's personal secretary.

{¶ 3} On October 10, 1996, defendant Lashutka, the city's former mayor ("Mayor"), authorized the mayoral investigation ("investigation") pursuant to Section 63 of the Columbus City Charter, which grants power to the Mayor to investigate the conduct of city employees, subpoena witnesses and place them under oath, and cause witnesses to be punished for contempt. Section 63 further provides that persons the Mayor appoints to conduct the investigation have the same powers granted to the Mayor under Section 63 of the city charter. The Mayor directed that the scope of the investigation encompass allegations of police misconduct and mismanagement raised against CPD officers and employees concerning four subject areas: (1) an allegedly illegal gambling operation that a retired CPD sergeant, murdered in March 1995, purportedly ran, (2) prostitution enterprises, particularly a purported prostitution ring Anthony Menucci allegedly conducted, (3) favoritism in the bestowing of benefits to or by CPD employees, and (4) other acts of misfeasance, malfeasance or nonfeasance that arose during the investigation.

{¶ 4} The Mayor appointed defendant Rice, who had served as the City's Safety Director since February 1995, to formally examine the allegations of misconduct and mismanagement. Defendant Rice delegated to defendant Sturtz, the city's Assistant Director of Public Safety, the duty to handle the investigation and to supervise the other members of the investigative team. Among the other team members were defendant Dean, who was then CPD's Commander of

Internal Affairs Bureau, and defendant Fischer, a CPD lieutenant. Defendants Sturtz and Dean had supervised previous internal investigations into allegations of misconduct concerning Commander Burns's possible association with illegal gambling and his handling of an investigation of Anthony Menucci.

{¶ 5} The results of the mayoral investigation were compiled into an April 4, 1997 draft report that the investigative team prepared and submitted to defendant Rice for review. Under Rice's direction, the draft report was revised and restructured to correspond to the four subject areas the Mayor designated for investigation.

{¶ 6} The finalized Report, dated June 30, 1997, contains a summary of information and events that led up to the mayoral investigation and presents an in-depth discussion of the allegations examined in the investigation. Specifically, the Report identifies 15 CPD employees whose conduct caused concern, together with the allegations raised against them; approximately 15 allegations pertain to Commander Burns and four allegations relate to Kathleen Burns. The Report discusses how the allegations arose and were investigated, what evidence was reviewed, the investigative team's conclusions regarding the allegations, and recommendations the investigative team made to the Mayor addressing various management issues and concerns noted in the Report. The Report concludes with 340 endnotes that cross-reference statements in the Report to specific testimony, witness statements, and documentary evidence contained in a voluminous appendix to the Report. The finalized Report was transmitted to the Mayor, who reviewed and released the Report to the public on June 30, 1997, without revision.

{¶ 7} On October 30, 1997, plaintiffs filed a complaint and, on January 6, 1998, filed an amended complaint against the city of Columbus, the Mayor, and the individual defendants. Plaintiffs alleged that the individual defendants were liable for defamation, conspiracy to defame, violations of the Ohio Constitution, intentional infliction of emotional distress in connection with the publication of the Report, negligence, and abuse of power. Plaintiffs alleged that the city negligently supervised the individual defendants in the investigation of plaintiffs and the publication of the Report, and that the city was vicariously liable, as the employer of the individual defendants, for their alleged misconduct. Finally, plaintiffs sought a declaratory judgment as to the constitutionality of Section 63 of the Columbus City Charter, the authority on which the Mayor commenced the investigation that ultimately resulted in the Report's publication.

{¶ 8} Utilizing Civ.R. 12(B)(6), each of the defendants moved to dismiss plaintiffs' claims. In a May 13, 1999 decision, journalized in a June 8, 1999 judgment entry, the trial court granted in part and denied in part the defendants' motions.

{¶ 9} With regard to the individual defendants, the court dismissed plaintiffs' claims for abuse of power, intentional infliction of emotional distress, and violations of the Ohio Constitution. The trial court declined to dismiss plaintiffs' claims for defamation and conspiracy to defame, concluding that plaintiffs had alleged sufficient facts that, if later proven to be true, conceivably could establish such claims. The court, however, noted that the viability of plaintiffs' claims was subject to the possibility that the individual defendants could present a properly supported motion for summary judgment that pointed to facts and evidence proving their entitlement to a "good faith" or "qualified immunity" defense to plaintiffs' defamation and conspiracy claims. See, generally, R.C. 2744.03(A)(6)(b) (providing that employees of political subdivisions are immune from liability unless the "employee's act or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner").

{¶ 10} The trial court further noted the city had asserted a defense of governmental immunity under R.C. Chapter 2744. See R.C. 2744.02(A) (setting forth the general rule of immunity under which political subdivisions are not liable in damages for personal injury). The court found that, although the city's claim of immunity was not subject to any of the exceptions listed in R.C. 2744.02(B), it "may" be subject to an exception in R.C. 2744.09(B). Under that statutory exception, a political subdivision employer is not entitled to R.C. Chapter 2744 immunity where one of its employees commences a civil action relative to matters arising out of the employment relationship between the employee and the political subdivision. R.C. 2744.09(B). The trial court ruled that the city thus *conceivably* could be found vicariously liable, as the employer of the individual defendants, *in the event* plaintiffs introduced sufficient evidence that the individual defendants were liable for defamation and conspiracy to defame.

{¶ 11} As a final matter, the trial court denied plaintiffs' request that Section 63 of the Columbus City Charter be declared unconstitutional.

{¶ 12} After the parties' extensive discovery, the trial court granted summary judgment on plaintiffs' remaining claims. Notwithstanding the findings in its May 13, 1999 decision, the trial court granted summary judgment to the city on the ground that the city is entitled to immunity under R.C. Chapter 2744. In granting summary judgment, the court agreed with the city that intentional acts between an employer and employee fall outside an employment relationship. Consequently, the court concluded that the employment-relationship exception to immunity in R.C. 2744.09(B) does not apply, and that the city is immune from liability pursuant to R.C. 2744.02(A).

{¶ 13} Similarly, in decisions filed January 26, 2001, and June 4, 2003, the trial court granted the Mayor and the individual defendants summary judgment on the

claims not resolved through their motions to dismiss. Specifically, the trial court found that the Mayor was not individually liable because plaintiffs presented no evidence that the Mayor wrote or published the Report. The court further ruled that the Mayor could not be held liable for the acts of the individual defendants under a theory of respondeat superior because the Mayor and the individual defendants were all agents or employees of the same employer, the city of Columbus.

{¶ 14} The court further concluded that the individual defendants were entitled to judgment as a matter of law on plaintiffs' defamation claims because plaintiffs did not present evidence demonstrating with convincing clarity that the individual defendants published any of the statements in the Report with "actual malice," as required by *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686, for a public figure/public official defamation action. The court also determined that R.C. 2744.03 provides immunity to the Mayor and the individual defendants against plaintiffs' defamation claims because plaintiffs failed to overcome the statute's qualified immunity defense by showing that the defendants acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" pursuant to R.C. 2744.03(A)(6)(b).

{¶ 15} Having determined that plaintiffs did not establish their defamation claims, the court concluded that the derivative claims for conspiracy to commit defamation also were not established, thus entitling the Mayor and the individual defendants to judgment on those claims as well. Finally, the court ruled that the intracorporate-conspiracy doctrine barred plaintiffs' conspiracy claims against the individual defendants.

{¶ 16} On June 17, 2003, the trial court entered final judgment in favor of all defendants and dismissed all of plaintiffs' claims with prejudice. Plaintiffs appeal, assigning the following errors:

"1. The trial court erred in granting summary judgment to defendants-appellees Thomas Rice, David Sturtz, D. James Dean and Thomas Fischer, and Gregory S. Lashutka as to plaintiffs'-appellants' claims for defamation and conspiracy to defame.

"2. The trial court erred in granting summary judgment to defendant-appellee the City of Columbus.

"3. The trial court erred in dismissing plaintiffs'-appellants' claims for declaratory judgment and violations of the Ohio Constitution."

{¶ 17} Preliminarily, we note that, on January 28, 2004, this court granted plaintiffs' January 23, 2004 Motion for Leave to Dismiss Assignment of Error Number One as it pertains to Gregory Lashutka only. Accordingly, defendant

Lashutka is dismissed as a party in this appeal, as no remaining assignments of error pertain to him.

{¶ 18} In their first assignment of error, plaintiffs assert that the trial court ignored evidence and erroneously granted summary judgment to the individual defendants on plaintiffs' claims of defamation and conspiracy to defame. Before we review the arguments plaintiffs advance in support of their first assignment of error, we begin by reviewing the law regarding defamation of public officials. No dispute exists that plaintiffs in this case are public officials for purposes of their defamation action.

{¶ 19} In Ohio, defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. *A & B–Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283; *Cooke v. United Dairy Farmers, Inc.*, Franklin App. No. 02AP–781, 2003-Ohio-3118, 2003 WL 21389646, ¶ 24; *Rountree v. WBNS TV, Inc.* (Nov. 23, 1999), Franklin App. No. 98AP–1649, 1999 WL 1054882. The type of defamation that plaintiffs allege is "libel," which involves the publication of written defamatory statements. *A & B–Abell Elevator* at 7, 651 N.E.2d 1283. "As a general rule, all persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication." *Cooke* at ¶ 25, quoting *Scott v. Hull* (1970), 22 Ohio App.2d 141, 144, 51 O.O.2d 289, 259 N.E.2d 160.

{¶ 20} Ohio law and federal law are in accord as to the basic principles of public-official defamation law. *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198, certiorari denied (1988), 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148. Statements made about public officials are constitutionally protected when the statements concern "anything which might touch on an official's fitness for office." *Soke v. Plain Dealer* (1994), 69 Ohio St.3d 395, 397, 632 N.E.2d 1282, quoting *Garrison v. Louisiana* (1964), 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125. In the present case, the Report, which published the results of the investigation the Mayor authorized, concerned matters pertaining to the fitness of Commander Burns and others as public officials. The Report's statements, thus, are entitled to constitutional protection.

{¶ 21} Under the standard enunciated in *New York Times* and its progeny, public officials or public figures must demonstrate "actual malice" with convincing clarity to establish the requisite degree of fault to support their defamation claims. *New York Times,* supra; *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094; *Gertz v. Robert Welch, Inc.*

(1974), 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789.  Accord *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187, paragraph two of the syllabus, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 973; *Bukky v. Painesville Tel. & Lake Geauga Printing Co.* (1981), 68 Ohio St.2d 45, 22 O.O.3d 183, 428 N.E.2d 405, syllabus.

{¶ 22} The actual malice standard "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times,* 376 U.S. at 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686.  To establish reckless disregard, a defamation plaintiff must present clear and convincing evidence that the false statements were made with a "high degree of awareness of their probable falsity," *Garrison,* 379 U.S. at 74, 85 S.Ct. 209, 13 L.Ed.2d 125, or that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262; *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 80, 518 N.E.2d 1177, certiorari denied (1988), 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886.  Actual malice is measured at the time of publication. *Dupler,* 64 Ohio St.2d at 124, 18 O.O.3d 354, 413 N.E.2d 1187; *Varanese,* at 80, 518 N.E.2d 1177.  As the United States Supreme Court explained, a showing of actual malice is necessary to promote an "uninhibited, robust, and wide-open" debate on important issues of public concern even though the debate "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times,* 376 U.S. at 269–270, 84 S.Ct. 710, 11 L.Ed.2d 686.

{¶ 23} Whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law for the court to decide. *Bose Corp. v. Consumers Union of U.S., Inc.* (1984), 466 U.S. 485, 510–511, 104 S.Ct. 1949, 80 L.Ed.2d 502.  In making this legal determination, the trial court must "review the statement under the totality of the circumstances" and read the statements at issue "in the context of the entire article" in order to determine "whether a reader would interpret them as defamatory." *Mendise v. Plain Dealer Publishing Co.* (1990), 69 Ohio App.3d 721, 726, 591 N.E.2d 789.

{¶ 24} Summary judgment procedures "are especially appropriate in the First Amendment area." *Dupler,* 64 Ohio St.2d at 120, 18 O.O.3d 354, 413 N.E.2d 1187.  "It is for this reason that the plaintiff's burden of establishing actual malice must be sustained with convincing clarity even when the plaintiff's case is being tested by a defendant's motion for summary judgment." *Varanese,* 35 Ohio St.3d at 81, 518 N.E.2d 1177, citing *Dupler,* at paragraphs one and two of the syllabus, and *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 257, 106

S.Ct. 2505, 91 L.Ed.2d 202. In ruling on a defendant's summary judgment motion in a public official's libel action, the trial court considers the evidence and all reasonable inferences in a light most favorable to the plaintiff to determine whether the plaintiff presented affirmative evidence such that a reasonable jury could find actual malice had been shown with convincing clarity. Id.; *Varanese*, 35 Ohio St.3d at 81, 518 N.E.2d 1177; *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 31 OBR 250, 509 N.E.2d 399, paragraph one of the syllabus; *Dupler* at paragraphs one and two of the syllabus. On appeal, this court conducts an independent examination of the whole record to determine whether actual malice has been established with convincing clarity to ensure that the *New York Times* standard has been satisfied. *Bose*, 466 U.S. at 508, 514, 104 S.Ct. 1949, 80 L.Ed.2d 502; *Varanese*, 35 Ohio St.3d at 80, 518 N.E.2d 1177; *Dupler*, 64 Ohio St.2d at 120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 25} Here, plaintiffs challenge the trial court's findings that plaintiffs presented insufficient evidence of "actual malice" to withstand the individual defendants' summary judgment motions. Plaintiffs assert that they presented "abundant evidence" that defamatory statements about plaintiffs contained in the Report were false and that defendants published the false and defamatory statements with actual malice.

{¶ 26} With regard to Commander Burns, plaintiffs contend that the individual defendants knowingly or recklessly published defamatory statements in the Report that they knew to be untrue concerning (1) Commander Burns's knowledge of or participation in an illegal gambling operation allegedly run by a retired CPD sergeant, and (2) Commander Burns's handling of the Menucci investigation.

{¶ 27} Initially, we note that, in addressing whether evidence substantiated the assertions of their complaint, plaintiffs repeatedly fail in their brief on appeal to distinguish between (1) "allegations" that were investigated, and (2) the Report's "conclusions" drawn from information obtained during the investigation. As an example, the initial "statement" with which plaintiffs take issue, concerning Commander Burns's knowledge of and participation in an illegal gambling operation, is expressly identified in the Report as an "allegation." The Report's "conclusions" regarding the allegation are that (1) "Burns could not be placed at the * * * address [of the alleged gambling operation] and actually participating in the illegal card games," and (2) "[t]his investigation does not confirm or deny the allegations that * * * [Commander] Burns participated in the illegal gambling operation[.]" Thus, contrary to plaintiffs' suggestions, the Report does not affirmatively conclude that Commander Burns knew of or participated in the illegal gambling operation, as plaintiffs alleged.

{¶ 28} Nevertheless, for purposes of our review, we will assume that (1) the statements with which plaintiffs take issue are false and defamatory and (2) the individual defendants were at least negligent in publishing the statements. Accordingly, our analysis focuses on whether plaintiffs presented clear and convincing evidence that the individual defendants acted with actual malice in publishing statements concerning plaintiffs.

{¶ 29} Plaintiffs assert that actual malice is demonstrated because the Report omitted pertinent evidence that disproves the allegation concerning Commander Burns's involvement in illegal gambling. Plaintiffs contend that all of the admitted participants of the purported illegal gambling operation who were interviewed in this and previous investigations flatly denied that Commander Burns had any association with it, but that none of their statements exonerating Commander Burns was included in the Report. Plaintiffs argue that the Report's failure to include the exculpatory statements demonstrates actual malice.

{¶ 30} The omission of material from a publication does not demonstrate a disregard for the truth unless the selection of material for inclusion in the publication "is made with a view toward the dissemination of false information." *Perez*, 35 Ohio St.3d at 220, 520 N.E.2d 198. In this case, because the Report concluded that Commander Burns could not be placed either at the address where illegal gambling purportedly occurred or as actually participating in illegal card games, the Report's omission of specific statements of participants in the allegedly illegal gambling operation does not demonstrate actual malice.

{¶ 31} Similarly lacking in merit is plaintiffs' further contention that the individual defendants' failure to include information in the Report absolving *another* CPD officer, not Commander Burns, of involvement in illegal gambling demonstrates actual malice. The omission of such information is irrelevant to show actual malice with regard to the Report's statements concerning Commander Burns's alleged involvement.

{¶ 32} Plaintiffs also argue that the sole evidence supporting Commander Burns's alleged connection with illegal gambling was information supplied by an unverified, anonymous informant who telephoned the Federal Bureau of Investigation's ("F.B.I.") Cincinnati office in April 1995, and accused Commanders Burns and Marcum of playing in and protecting the alleged illegal gambling operation of the retired CPD sergeant. Plaintiffs assert that the weight the investigative team gave to the single, unverified source constituted an unreasonable departure from accepted methods of investigation and reporting and thus is evidence of actual malice.

{¶ 33} Reckless disregard may be found " 'where a story is fabricated by the defendant, is the product of his imagination, or is based *wholly* on an unverified anonymous telephone call.' " (Emphasis added.) *A & B–Abell,* 73 Ohio St.3d at 12–13, 651 N.E.2d 1283, quoting *St. Amant,* 390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262. The record does not support plaintiffs' assertion that the allegation concerning Commander Burns's knowledge of or participation in illegal gambling was based "wholly" on an unverified anonymous telephone call. Although the record indicates one of the *initial* sources of such allegations was the anonymous informant, the record further reflects that similar allegations about Commander Burns were received from several named law enforcement sources within the CPD. Because other evidence supports the allegation at issue, plaintiffs have failed to establish reckless disregard in either the investigation of the allegation or the reporting of the results of the investigation concerning the allegation.

{¶ 34} Next, plaintiffs take issue with statements in the Report regarding the allegation that "Commander Walter Burns failed to carry out his responsibilities during the criminal investigation of the Anthony Menucci escort service." Plaintiffs contend that the individual defendants knew or should have known the Report falsely stated that (1) "critical errors" occurred in the Menucci investigation while it was under the direct supervision and control of Commander Burns and (2) Commander Burns's handling of the investigation "eliminated any possibility by the Columbus Division of Police to file criminal charges on Menucci."

{¶ 35} Specifically, plaintiffs contend that evidence in the record, such as testimony and an affidavit Commander Burns submitted, disputes the statement that "critical errors" occurred during Commander Burns's handling of the Menucci investigation, including the disappearance of 90 to 100 written investigative summaries, surveillance logs, progress reports, photographs, and a videotape relating to the investigation. According to plaintiffs, their evidence further disputes the Report's additional notation of "critical errors" involving the disappearance of a Rolodex seized from the Menucci residence, the failure to follow proper procedures for handling and documenting evidence, and Commander Burns's impeding an internal affairs investigation by ordering that a CPD officer's name be removed from a potentially incriminating report. Plaintiffs contend that the Report's conclusion regarding Commander Burns's handling of the Menucci investigation should have been consistent with the evidence plaintiffs presented.

{¶ 36} The record, however, reveals that other evidence, including statements of several identified CPD officers who served with Commander Burns during the Menucci investigation, provides support for the Report's conclusion that errors occurred during Commander Burns's handling of the Menucci investigation.

Additional support for the Report's conclusion also is found in a letter from then United States Attorney Edmund Sargus to CPD Deputy Chief Rockwell. In the letter, Sargus, who apparently reviewed much of the same evidence relating to Commander Burns's handling of the Menucci investigation as was examined in the investigation, concluded that, while there was not sufficient evidence to support a federal criminal conviction of Commander Burns, "clear and convincing evidence" existed that "the Menucci investigation was mishandled and the integrity of the evidence compromised by Commander Burns' actions." Sargus further concluded that "Commander Burns' actions have created serious problems in the chain of custody of seized evidence" in the Menucci case. The individual defendants were justified in relying upon the testimony, evidence collected, and conclusions of other law enforcement officers. See *New York Times,* supra.

{¶ 37} Moreover, contrary to plaintiffs' contention, where evidence conflicts and is subject to differing reasonable interpretations, such a dispute supports, rather than precludes, summary judgment for defendants in a public official defamation case. *Perez,* 35 Ohio St.3d at 219, 520 N.E.2d 198. The election to make one of two reasonable interpretations does not demonstrate a disregard for the truth. Id. at 220, 520 N.E.2d 198. Because the Report's conclusions regarding Commander Burns's handling of the Menucci investigation were based upon reasonable interpretations of conflicting evidence, actual malice is not demonstrated. Id.

{¶ 38} Plaintiffs also argue that the individual defendants knew or should have known of the falsity of the statement that Commander Burns's handling of the Menucci investigation "eliminated any possibility by the Columbus Division of Police to file criminal charges on Menucci." Plaintiffs contend that defendant Rice was fully aware at the time the Report was published that a Franklin County Grand Jury had indicted Menucci for promoting prostitution, as reflected in a June 7, "1997" press release Rice issued, in which Menucci's indictment was expressly noted.

{¶ 39} While the record reflects that the press release announcing the grand jury's indictment of Menucci was issued on June 7, 1996, not 1997, the date is not dispositive of plaintiffs' contentions. Rather, arguments that the defendants "should have known" of the alleged falsity of a statement or failed to verify the truth of a statement are constitutionally insufficient to show actual malice unless the statement is incredible on its face or the defendant in fact had subjective reasons to doubt the source's reliability. *Varanese,* 35 Ohio St.3d at 82, 84, 518 N.E.2d 1177, citing *St. Amant,* 390 U.S. at 731–732, 88 S.Ct. 1323, 20 L.Ed.2d 262, and *Dupler,* 64 Ohio St.2d at 119, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 40} Here, the record indicates that a Franklin County Grand Jury issued a criminal indictment against Menucci for prostitution-related offenses. The record further reflects, however, that the Franklin County Prosecutor's Office later dropped the charges and that federal charges against Menucci were filed instead, resulting in his conviction for federal money laundering. Rice testified that, although he may have reviewed the press release at the time it was issued, which was over a year before the Report was released, he did not recall it when reviewing the Report for publication. Rice's failure to recall the contents of the press release, while arguably negligent, is "constitutionally insufficient to show the recklessness that is required for a finding of actual malice." *New York Times,* 376 U.S. at 288, 84 S.Ct. 710, 11 L.Ed.2d 686. Moreover, even if the statement at issue is false, whether every statement in the Report is actually true is not pivotal to the "actual malice" inquiry. See discussion in *New York Times* at 270–273, 84 S.Ct. 710, 11 L.Ed.2d 686 (observing "[t]hat erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need * * * to survive,' " quoting *Cantwell v. Connecticut* [1940], 310 U.S. 296, 310, 60 S.Ct. 900, 84 L.Ed. 1213). Plaintiffs have not demonstrated actual malice.

{¶ 41} Turning to Kathleen Burns, plaintiffs take issue with statements about Kathleen Burns that are contained in the Report's Executive Summary section, which identifies CPD employees and their conduct that caused "concern" during the investigation. Plaintiffs contend that the statements "create an impression" that Kathleen Burns hid investigative summaries and attempted to improperly access internal affairs files relating to the Menucci investigation, and that Commander Burns assigned her to work improper overtime during the Menucci investigation. Plaintiffs assert that the statements were published with knowledge of their falsity or reckless disregard for their truth because (1) the investigative team failed to fully investigate the allegations and unreasonably departed from accepted standards of investigation by failing to interview Kathleen Burns and other witnesses who were critical to proving or disproving the allegations and (2) the Report omitted exculpatory evidence relating to the allegations.

{¶ 42} The plaintiffs in this case have failed to present clear and convincing evidence that the individual defendants knew or had serious doubt about the truth of the statements about Kathleen Burns. First, Kathleen Burns does not dispute that two of the missing Menucci investigative summaries were found in her office on a computer disk. Second, although plaintiffs argue that statements in the Report imply that she improperly accessed a CPD record room where internal affairs files were kept, the Report actually concludes that it was not proven that the room had an unauthorized entry. Third, Kathleen Burns

admitted that her husband, when he was Vice Commander, assigned her over 30 hours of overtime, as stated in the Report, but that she did not recall whether it involved the Menucci investigation. Contrary to plaintiffs' suggestions, the Report does not conclude that Kathleen Burns's performance of the referenced overtime was improper, although statements in the Report may raise questions about the propriety of a senior officer assigning overtime to his spouse.

{¶ 43} Moreover, plaintiffs' arguments are without merit insofar as they contend that the investigative team's failure to fully investigate and to interview witnesses concerning the statements about Kathleen Burns demonstrates actual malice. A failure to investigate the truth or falsity of a publication, even when a reasonably prudent person would have done so, may raise an issue of negligence, but it does not demonstrate actual malice unless the plaintiff first establishes that the defendant had a high degree of awareness of probable falsity, had serious doubts as to the truth of the statements, or purposefully avoided the truth. *Harte–Hanks Comm., Inc. v. Connaughton* (1989), 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562; *St. Amant,* 390 U.S. at 731, 733, 88 S.Ct. 1323, 20 L.Ed.2d 262; *A & B–Abell Elevator,* 73 Ohio St.3d at 12–13, 651 N.E.2d 1283; *Varanese,* 35 Ohio St.3d at 81, 518 N.E.2d 1177; *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 118, 567 N.E.2d 253, fn. 3, certiorari denied (1991), 501 U.S. 1231, 111 S.Ct. 2853, 115 L.Ed.2d 1021.

{¶ 44} Thus, even if arguable negligence was shown in defendants' publishing the statements about Kathleen Burns before they conducted a more thorough investigation and examined all available sources of information, such negligence is insufficient to establish actual malice. *Dupler,* 64 Ohio St.2d at 119, 18 O.O.3d 354, 413 N.E.2d 1187 ("[s]ince reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice"); *Varanese,* 35 Ohio St.3d at 81, 518 N.E.2d 1177, citing *St. Amant,* supra; *Early v. Toledo Blade* (1998), 130 Ohio App.3d 302, 327, 335, 720 N.E.2d 107, appeal dismissed (1999), 85 Ohio St.3d 1405, 706 N.E.2d 788, certiorari denied (1999), 528 U.S. 964, 120 S.Ct. 399, 145 L.Ed.2d 311; *Rountree,* supra (stating that "the failure of a reporter to fully investigate all the allegations, while possibly rising to the level of negligence, does not show actual malice"). As the trial court noted, "[w]hether the publishers acted prudently in all respects, or as reasonable persons in their positions would have acted, is not the question before the court." Plaintiffs simply have not shown with convincing clarity that defendants ignored or omitted evidence in an effort to purposefully avoid the truth or to disseminate false information regarding Kathleen Burns, or that defendants otherwise acted with reckless disregard for the truth in publishing the statements at issue. Accordingly, the actual-malice standard has not been satisfied.

{¶ 45} Plaintiffs next assert that the trial court disregarded "abundant circumstantial evidence" that the individual defendants "had no intention of publishing the truth." In support, plaintiffs note that defendants (1) acted with spite and ill will and conducted a "smear campaign" directed at Chief Jackson to remove him from office and to damage the reputations and careers of those deemed loyal to him, including these plaintiffs, (2) relied on questionable sources to support the allegations against plaintiffs, and (3) edited and restructured the Report to highlight plaintiffs' alleged misconduct and to cast plaintiffs in a "bad light."

{¶ 46} A plaintiff is entitled to prove actual malice through circumstantial evidence, although courts are not to place too much reliance on such factors. *Harte–Hanks*, at 668, 109 S.Ct. 2678, 105 L.Ed.2d 562; *Perk v. Reader's Digest Assn., Inc.* (C.A.6, 1991), 931 F.2d 408, 411. Actual malice in the context of defamation is not satisfied merely through a showing of personal spite or ill will, as the defendants' motives alone are insufficient to establish actual malice. *Harte–Hanks*, 491 U.S. at 666, 109 S.Ct. 2678, 105 L.Ed.2d 562; *Varanese* at paragraph one of the syllabus; *Dupler*, 64 Ohio St.2d at 119, 18 O.O.3d 354, 413 N.E.2d 1187. Nonetheless, the defendants' motives, when combined with other circumstantial evidence, may amount to a showing of malice. *Perk*, supra. In any event, the focus is on the defendants' attitude toward the truth or falsity of the publication, rather than the defendants' attitude toward the plaintiffs. *Garrison*, 379 U.S. at 73–79, 85 S.Ct. 209, 13 L.Ed.2d 125; *Perez* at paragraph one of the syllabus; *Dupler*, at 119, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 47} According to the record, Rice expressed an opinion that Chief Jackson and Commander Burns should resign from their positions in the face of the allegations against them. Even so, plaintiffs have not shown with convincing clarity that Rice or the other individual defendants engaged in a "smear campaign" or had spite and ill will as a motive for investigating or publishing defamatory allegations concerning plaintiffs. Even if evidence of convincing clarity had demonstrated such a motive, such evidence still would be insufficient to establish actual malice in the absence of clear and convincing evidence, lacking in this case, that the defendants published the defamatory statements about plaintiffs with knowledge that the statements were false or with a high degree of awareness of their probable falsity. *Varanese; Perez*, supra. "A defendant who was motivated to publish by the blackest spirit of hatred and spite will not be liable if he subjectively believed in the truth of the statement." *Varanese*, 35 Ohio St.3d at 80, 518 N.E.2d 1177.

{¶ 48} Plaintiffs next contend that circumstantial evidence of actual malice is demonstrated in defendants' reliance on "questionable" sources, as obvious reasons exist to doubt the truthfulness or reliability of the sources. As examples, plaintiffs refer to the Report's inclusion of (1) allegations of an anonymous

informant who telephoned the F.B.I. office in Cincinnati concerning Commander Burns's alleged involvement with illegal gambling and (2) an incarcerated criminal's allegations concerning misconduct that Chief Jackson and others within the CPD, not including the instant plaintiffs, allegedly committed.

{¶ 49} Where a report is made of a third party's allegations, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant*, 390 U.S. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262. With regard to the anonymous informant, we previously concluded that other, sufficient evidence supported the allegation regarding Commander Burns's possible involvement with illegal gambling; thus, plaintiffs failed to demonstrate actual malice in the Report's including the anonymous informant's allegations.

{¶ 50} With regard to the Report's inclusion of a prisoner's allegations concerning misconduct of Chief Jackson and others, we note initially that the allegations at issue are not directed toward Commander Burns or Kathleen Burns; hence, they do not evidence defendants' actual malice toward these two plaintiffs. However, even if the allegations are relevant and material to our consideration of plaintiffs' contentions, the Report specifically notes that law enforcement personnel deemed the prisoner source to be a "scam artist," a "liar," and "not reliable." Contrary to plaintiffs' contentions, the Report's disclosure of concerns or credibility problems regarding a source displays a lack of actual malice rather than malice. *Rountree*, supra, citing *Barry v. Time, Inc.* (N.D.Cal. 1984), 584 F.Supp. 1110, 1122; and *Barger v. Playboy Enterprises, Inc.* (N.D.Cal. 1983), 564 F.Supp. 1151, 1157.

{¶ 51} Finally, the editing and restructuring of the April draft report, which plaintiffs argue "slanted" the Report against plaintiffs and highlighted their alleged wrongdoing, is insufficient to meet the actual malice standard. See *Perez*, 35 Ohio St.3d at 220–221, 520 N.E.2d 198 (finding that similar allegations of improper motive, reliance on questionable sources, and questionable editing were insufficient to establish actual malice); *Perk*, 931 F.2d at 411–412 (concluding that the defendant's motive to write a story with a "particular slant" to portray the plaintiff in a negative light, even when coupled with the defendant's reliance on questionable sources and its failure to interview witnesses and to perform a more thorough investigation, was insufficient to establish actual malice).

{¶ 52} In the final analysis, plaintiffs failed to present clear and convincing evidence that the individual defendants published statements in the Report with knowledge of their falsity or with reckless disregard for the truth or falsity of their publication. Accordingly, the trial court properly granted summary judgment to the individual defendants on plaintiffs' defamation claims.

{¶ 53} Given the foregoing conclusion, we necessarily also conclude that plaintiffs are unable to proceed on their claims for conspiracy to commit defamation. See *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 594–595, 21 O.O. 471, 37 N.E.2d 584 (finding no cause of action for conspiracy to commit defamation where no underlying cause of action for defamation exists). See, also, *A & B–Abell Elevator*, 73 Ohio St.3d at 15, 651 N.E.2d 1283 (holding that the "actual malice" standard applies to claims that are derivative of a defamation claim); and *Kenty v. Transamerica Premier Ins. Co.* (Nov. 18, 1993), Franklin App. No. 93AP–478, 1993 WL 478056, reversed on other grounds (1995), 72 Ohio St.3d 415, 650 N.E.2d 863 (determining that without the existence of the underlying cause of action, there can be no claim for civil conspiracy). Summary judgment therefore appropriately was granted on plaintiffs' claims for conspiracy to commit defamation. Whether the intracorporate-conspiracy doctrine also bars the conspiracy claims is a question we need not reach, and we decline to address it. App.R. 12(C)(1)(c).

{¶ 54} The trial court properly granted summary judgment in favor of the individual defendants on plaintiffs' claims of defamation and conspiracy to commit defamation, and plaintiffs' first assignment of error is overruled.

{¶ 55} In their second assignment of error, plaintiffs assert that the trial court improvidently granted summary judgment in favor of the city of Columbus because the trial court's ultimate determination, that R.C. 2744.09(B)'s exception to political subdivision immunity does not apply to this case, is erroneous. Plaintiffs argue that the trial court's ruling conflicts with this court's decision in the related case of *Marcum v. Rice* (July 20, 1999), Franklin App. No. 98AP–717, 1999 WL 513813, discretionary appeal not allowed (1999), 87 Ohio St.3d 1449, 719 N.E.2d 966 (concluding that the plaintiff police officers' defamation claims against the city of Columbus based on the mayoral investigation and the publishing of the Report relate to matters arising out of the employment relationship between the plaintiffs and the city), and also conflicts with the trial court's own prior ruling that R.C. 2744.09(B) "may apply to this action." Plaintiffs submit the trial court was bound under the "law of the case" doctrine to follow its prior ruling on this issue.

{¶ 56} In light of our disposition of plaintiffs' first assignment of error, we need not reach the merits of plaintiffs' claim. As plaintiffs alleged, the city's liability to plaintiffs is derivative, predicated upon respondeat superior principles under which the city is potentially liable as the employer of individual defendants found to have engaged in misconduct, and on the city's negligent supervision of individual defendants found to have committed misconduct. However, "if an employee has no liability, the employer cannot be liable under the theory of respondeat superior because any liability of the employer is derivative

of the employee's liability." *Walk v. Ohio Supreme Court,* Franklin App. No. 03AP–205, 2003-Ohio-5343, 2003 WL 22290209, ¶ 6, citing *Pretty v. Mueller* (1997), 132 Ohio App.3d 717, 723, 726 N.E.2d 503. Similarly, an underlying requirement in an action for negligent supervision is that the employee is individually liable for a tort or a claimed wrongdoing against a third party, who then seeks recovery against the employer. *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 217, 527 N.E.2d 1235.

{¶ 57} In overruling plaintiffs' first assignment of error, we concluded that plaintiffs failed to present sufficient evidence of the individual defendants' actual malice to establish defendants' liability for the defamation-based claims. Because plaintiffs' claims against the city are derivative of the defamation-based claims against the individual defendants, they likewise cannot be sustained. Accordingly, plaintiffs' second assignment of error is rendered moot, and we decline to address it. App.R. 12(A)(1)(c).

{¶ 58} In their third assignment of error, plaintiffs assert that the trial court erred in dismissing their constitutional challenge to Section 63 of the Columbus City Charter. Plaintiffs contend that, but for the authority granted to the Mayor under Section 63, the investigation that ultimately produced the allegedly defamatory Report would not have been possible. Plaintiffs argue that Section 63 unconstitutionally delegates judicial power to the Mayor by granting the Mayor unlimited subpoena and contempt power. Thus, plaintiffs assert, Section 63 is unconstitutional as overbroad and in violation of the separation of powers doctrine.

{¶ 59} Section 63 provides:

"The mayor may without notice cause the affairs of any department or the conduct of any officer or employee to be examined. Any person or persons appointed by the mayor to examine the affairs of any department or the conduct of any officer, or employee, shall have the same power to compel the attendance of witnesses, and the production of books and papers and other evidence and to cause witnesses to be punished for contempt, as is conferred upon the council by this charter."

{¶ 60} Plaintiffs' request for declaratory judgment regarding the constitutionality of Section 63 was dismissed in the trial court, pursuant to Civ.R. 12(B)(6), under which a claim may be dismissed when it appears " 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.' " *Springfield Fireworks, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal,* Franklin App. No. 03AP–330, 2003-Ohio-6940, 2003 WL 22976621, ¶ 12, quoting *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. A court looks only to the complaint and, accepting all factual allegations in the complaint as true and drawing all

reasonable inferences in favor of the nonmoving party, determines whether the allegations are legally sufficient to state a claim. Id.

{¶ 61} In asserting that Section 63 is unconstitutional, plaintiffs focus on its contempt provision. The trial court concluded that plaintiffs' complaint did not allege that plaintiffs actually had been punished for contempt, and it determined that the lack of actual punishment distinguished this case from *Haas v. Jennings* (1929), 120 Ohio St. 370, 166 N.E. 357, upon which plaintiffs relied. In *Haas*, the Ohio Supreme Court held unconstitutional an identical Toledo City Charter provision under which the petitioners in that case were punished for contempt. Because the plaintiffs here were not actually so punished, the present trial court concluded that it was precluded from passing on the constitutionality of Section 63, as a justiciable controversy did not exist, plaintiffs lacked standing, and the case was not ripe for review.

{¶ 62} Before plaintiffs have standing to present a claim for declaratory relief, they generally must have suffered an actual injury, and an actual controversy must exist between the parties. See *Dickason v. State*, Franklin App. No. 01AP–1373, 2002-Ohio-5168, 2002 WL 31160094, ¶ 17 (determining that a claim for declaratory relief is appropriately dismissed if neither a justiciable issue nor an actual controversy between parties exists and requires speedy relief to preserve rights that may otherwise be lost or impaired). Notwithstanding the lack of actual punishment upon these plaintiffs for contempt during the mayoral investigation, plaintiffs' compliance with the mayoral investigation under a *threat* of punishment for contempt arguably is sufficient to confer standing on plaintiffs to test the validity of Section 63. See *Pack v. Cleveland* (1982), 1 Ohio St.3d 129, 131, 1 OBR 166, 438 N.E.2d 434; *Peltz v. S. Euclid* (1967), 11 Ohio St.2d 128, 40 O.O.2d 129, 228 N.E.2d 320, paragraph one of the syllabus (holding that a person has standing to bring an action for declaratory judgment to test the validity of an ordinance, even where the person does not violate the ordinance but faces the threat of criminal penalties if the ordinance is violated).

{¶ 63} Nevertheless, even if plaintiffs have standing to litigate their claim that Section 63 is unconstitutional, the trial court's dismissal of the claim was proper. Pursuant to Section 233 of the Columbus City Charter, "[i]f any section or part of a section of this charter proves to be invalid or unconstitutional, the same shall not be held to invalidate or impair the validity, force or effect of any other section or part of a section of this charter unless it clearly appear that such other section or part of a section is wholly or necessarily dependent for its operation upon the section or part of a section so held unconstitutional or invalid." Thus, if the contempt clause in Section 63 is stricken as invalid, it is severed, and the balance of Section 63 remains intact by virtue of Section 233's "saving clause." Under the remaining portions of Section 63, the Mayor still would retain power to issue

subpoenas and investigate alleged improprieties of city employees, including the power to authorize the mayoral investigation in this case, without violating any allegedly unconstitutional provisions.

{¶ 64} Accordingly, the trial court did not err in dismissing plaintiffs' constitutional challenge to Section 63 of the Columbus City Charter, and plaintiffs' third assignment of error is overruled.

{¶ 65} Having overruled plaintiffs' first and third assignments of error, rendering moot their second assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BOWMAN and PETREE, JJ., concur.