**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**JON C. ABERNATHY**
**ANDREW B. JANUTOLO**
Goodin Abernathy, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**BRIAN L. OAKS**
Kokomo, Indiana



FILED
Jul 10 2012, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KATHLEEN G. BABCHUK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A05-1111-CT-597 |
| | ) | |
| KIRK J. DANIELS | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |
| | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT 4
The Honorable George A. Hopkins, Judge
Cause No. 34D04-0801-CT-106

**July 10, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Kirk Daniels ("Daniels") filed a claim in Howard Superior Court against Kathleen Babchuk ("Kathleen"), alleging that Kathleen had written a letter defaming him. The trial court subsequently denied several of Kathleen's motions, including her motion for summary judgment, her Anti-SLAPP[1] motion, and her motion for judgment on the evidence. After the jury found in favor of Daniels, Kathleen filed a motion to correct error which the trial court also denied. On appeal, Kathleen presents two issues, which we renumber and restate as:

I.  Whether the content of Kathleen's letter was not defamatory as a matter of law;

II.  Whether the content of Kathleen's letter was protected by a qualified privilege; and

III.  Whether Daniels's complaint should have been dismissed under Indiana's Anti-SLAPP statutes.

We affirm.

**Facts and Procedural History**

In 2007, Kathleen and her then-husband, Dr. William Babchuk ("William") were in the process of getting divorced. On April 20, 2007, the Babchuks attended a court-ordered mediation session. Also in attendance was Daniels, who had been invited by William to help ascertain the couple's assets. Daniels is a financial planner based in Kokomo, Indiana. After providing the requested documents, Daniels left the mediation,

---

[1]  "Strategic lawsuits against public participation (SLAPPs) are 'meritless suits aimed at silencing a plaintiff's opponents, or at least diverting their resources.'" Nexus Grp., Inc. v. Heritage Appraisal Serv., 942 N.E.2d 119, 122 (Ind. Ct. App. 2011) (quoting John C. Barker, Common–Law and Statutory Solutions to the Problem of SLAPPS, 26 Loy. L.A. L. Rev. 395, 403 (1993)). Indiana adopted an Anti-SLAPP act in 1998 in order to discourage such lawsuits. See Ind. Code §§ 34-7-7-1 through 34-7-7-10; see also Nexus, 942 N.E.2d at 122.

which continued for approximately three more hours. Pursuant to the mediation agreement, the Babchuks agreed to divide certain assets. Among the assets was an A.G. Edwards Self Employment Pension ("SEP") account containing at that time approximately $634,000. The Babchuks agreed that $500,000 of this account was to go to Kathleen.

Five days after the mediation session, William told Daniels to transfer $500,000 out of the A.G. Edwards account to a new account with Gunn Allen, the firm that supervised Daniels. This transfer occurred two days later, on April 27, 2007.[2] According to Daniels, the funds were transferred in an effort to "hedge" the $500,000, i.e., avoid any market fluctuations that might have affected the value of the A.G. Edwards account. When Kathleen discovered this transaction, she filed a request for a temporary restraining order to prevent the transfer of marital property. Kathleen also agreed that she would bear the risk of any market loss in the A.G. Edwards account. On May 1, 2007, the trial court granted the request for a temporary restraining order, and on May 10, 2007, the funds were returned to the A.G. Edwards account. Also on May 10, 2007, the parties agreed to a final restraining order.

On August 2, 2007, Kathleen sent the following letter to general counsel at Gunn Allen:

August 2, 2007

Mr. David Jarvis
General Counsel

---

[2] Although A.G. Edwards transferred the money to the new account on April 27, the funds were not received until May 7, 2007.

3

Gunn Allen Financial, Inc.
5002 West Waters Avenue
Tampa, Florida 33634

RE: Kirk J. Daniels

Dear Mr. Jarvis:

The purpose of this correspondence is to request your review of the unethical conduct by one of your representatives, Mr. Kirk J. Daniels. I have submitted this concern to the Indiana Secretary of State, Securities Division, as well as the North American Securities Administrators Association.

The following incident provides only one example of Mr. Daniels' unprofessional conduct. I have other recorded events of his improprieties spanning the most recent three year period with supporting documentation to verify said events.

The following summarizes the unethical transfer of funds out of the A.G. Edwards account #4886, to an account managed by Mr. Daniels. This action resulted in the generation of a court order restraining this illegal transfer.

On Friday, April 20, 2007, starting at approximately 8:00 am, Kirk Daniels attended and actively participated in the mediation negotiations for the dissolution of the marriage for William I. Babchuk vs Kathleen Babchuk. Daniels represented William Babchuk as his securities/investment advisor. The meeting took place at the law office of Miroff, Cross & Woolse . . . . A final mediation agreement was obtained at approximately 8:30 pm. The mediator was Darryn L. Duchon and representing counsels included Nancy Cross and Greg Noland.

Within the week following this mediation, Daniels and William Babchuk took actions inconsistent with the terms of the court binding mediated agreement; specifically they placed orders to transfer all funds out of the A.G. Edwards account #4886 over to Pershings, which was managed by Kirk Daniels. The account #4886 was actually moved over to the Pershings' company and remained there for one week before being returned to the A.G. Edwards' company. Attached are copies of said mediation agreement and the court order restraining the transfer of property.

Throughout this entire legal mediation there has been inadequate documentation for accounts managed by Daniels. Actual monthly and annual statements summarizing the assets managed by Daniels were not

4

provided. Instead, Daniels attended the mediation meetings with his personal laptop and printed out random reports. Comprehensive reporting of accounts managed by Daniels was requested by legal counsel, and not provided. Provision of said documentation is requested from you to support the enclosed mediation agreement.

During my conversation with Sue Walsh this morning she asked that I provide my contact information. . . . Please contact me if you have any further questions or wish to receive the additional evidence I have compiled.

Sincerely,
/s/
Kathleen G. Babchuk.

Enclosures:
1) FAX transmittal to A.G. Edwards & RBC Dain Rauscher
2) Miroff FAX transmittal of Restraining Order
3) Verified Emergency Petition for Temporary Restraining Order
4) Temporary Restraining Order Against the Transfer of Property
[5]) Agreed Restraining Order Against the Transfer of Property
6) Mediation Agreement 4-20-07
7) Request for Production of Documents from W. Babchuck, July 2006

Appellant's App. pp. 142-43. Kathleen sent the letter not only to Mr. Jarvis, but also to the Financial Industry Regulatory Authority, Inc., the Securities Division of the Indiana Secretary of State's Office, and the North American Securities Administrators Association.

As a result of Kathleen's letter, Daniels was placed on a period of enhanced supervision with Gunn Allen, and Gunn Allen itself was also investigated by regulatory authorities. However, Gunn Allen's subsequent investigation revealed no wrongdoing on the part of Daniels. On August 7, 2007, five days after the date of Kathleen's letter, the parties signed a final property settlement agreement.

On January 28, 2008, Daniels filed a defamation complaint against Kathleen. On April 15, 2008, Kathleen responded by filing a motion to dismiss pursuant to Indiana's Anti-SLAPP statutes, along with a counterclaim for abuse of process. On November 6, 2008, Kathleen filed a motion for summary judgment on Daniels's claim of defamation. The trial court held a hearing on Kathleen's motion to dismiss under the Anti-SLAPP statutes on December 17, 2008, and the trial court issued an order denying the motion to dismiss on December 30, 2008.[3] After several delays, a hearing on Kathleen's motion for summary judgment was held on February 3, 2010. The trial court denied Kathleen's motion for summary judgment on February 16, 2010.

After an unsuccessful attempt at mediation, a jury trial commenced on September 13, 2011. The following day, after the close of Daniels's case-in-chief, Kathleen moved for judgment on the evidence and renewed her Anti-SLAPP motion. The trial court denied these motions after a hearing. At the conclusion of the trial, the jury returned a verdict in favor of Daniels in the amount of $35,000. Kathleen filed a motion to correct error on October 14, 2011, which the trial court denied on November 1, 2011. Kathleen now appeals.

**I. Defamation**

Kathleen's first argument is that the statements contained in her letter did not constitute defamation as a matter of law. This argument is directed at the trial court's

---

[3] On January 28, 2009, Kathleen filed a motion to reconsider the court's denial of her motion to dismiss, or in the alternative, to certify its order for interlocutory appeal. The trial court denied both of these requests on February 24, 2009.

denial of Kathleen's motion for summary judgment, her motion for judgment on the evidence, and her motion to correct error.

A. *Standards of Review*

On an appeal from a trial court's ruling on a motion for summary judgment, our standard of review is well settled:

> A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

Florian v. Gatx Rail Corp., 930 N.E.2d 1190, 1194 (Ind. Ct. App. 2010), trans. denied (quoting Dugan v. Mittal Steel USA Inc., 929 N.E.2d 184, 185-86 (Ind. 2010)).

Our standard of review of a trial court's ruling on a motion for judgment on the evidence is the same standard that governs the trial court in making its decision. State Farm Mut. Auto. Ins. Co. v. Noble, 854 N.E.2d 925, 931 (Ind. Ct. App. 2006), trans. denied. Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence, and the motion should be granted only where there is no substantial evidence to support an essential issue in the case. Id. On appeal, we examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the non-moving party. Id. If there is evidence that would

7

allow reasonable people to differ as to the result, judgment on the evidence is improper. Id.; see also Ind. Trial Rule 50(A).

In general, this court reviews the trial court's ruling on a motion to correct error for an abuse of discretion. City of Indianapolis v. Hicks, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), trans. denied. However, to the extent the issues presented with regard to the motion to correct error are purely questions of law, our review is *de novo*. Id. Kathleen argues that the statements in her letter were not defamatory as a matter of law. Thus, whether framed as an issue of the propriety of summary judgment, judgment on the evidence, or a motion to correct error, our standard of review is essentially the same.

B. *Defamation*

In Dugan, supra, our supreme court summarized the law of defamation in Indiana:

To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages. A statement is defamatory if it tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person. One type of defamation action, alleging defamation *per se*, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct. In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory *per quod*. In actions for defamation *per se*, damages are presumed, but in actions for defamation *per quod*, a plaintiff must prove damages.

929 N.E.2d at 186 (citations and internal quotations omitted). In addition, "[t]he framers of the Indiana Constitution placed high value on reputation," and "[o]ur Constitution provides that 'All courts shall be open; and every person, for injury done to him in his

8

person, property, or *reputation*, shall have remedy by due course of law.'" Kelley v. Tanoos, 865 N.E.2d 593, 596 (Ind. 2007) (quoting Ind. Const. art. 1, § 12) (emphasis added).

Kathleen first insists that the factual statements in her letter are true. It is well settled in our state that a defendant cannot be held liable for defamation if the statement made was true. "Our constitution provides: 'In all prosecutions for libel, the truth of the matters alleged to be libellous, may be given in justification.'" Cortez v. Jo-Ann Stores, Inc., 827 N.E.2d 1223, 1230 (Ind. Ct. App. 2005) (quoting Ind. Const. art. 1, § 10). Accordingly, in Indiana, true statements can never give rise to liability for defamation. Id. See also Williams v. Tharp, 914 N.E.2d 756, 767 (Ind. 2009) (noting that "liability for defamation does not exist where statements are true.").

Daniels disputes Kathleen's claims that her statements are true, and first attacks the claim in Kathleen's letter that Daniels and William "took actions inconsistent with the terms of the court binding mediated agreement." Appellant's App. p. 142. Daniels notes that William asked him to transfer the funds out of the A.G. Edwards account on April 25, 2007 and that the temporary restraining order did not go into effect until May 1, 2007. He further claims that the transfer of the funds did not change the title on the account and that Kathleen always remained a beneficiary of the account.

Kathleen is of the opinion that she was entitled to the $500,000 from the specific A.G. Edwards account listed in the mediation agreement, whereas Daniels claims the mediation agreement simply entitled Kathleen to $500,000 and the particulars of the account are immaterial. The mediated settlement agreement consists of a printed

9

spreadsheet listing various assets, their "Marital Pot Value," and the portion thereof Kathleen or William were entitled to. Kathleen and William, and their respective attorneys signed the last page of this mediated agreement. Kathleen refers us to no evidence indicating that the mediation agreement was "binding" or that she was entitled to the funds from that specific A.G. Edwards account. All the mediated agreement indicates is that she was entitled to $500,000 of the *value* of the A.G. Edwards account.

Kathleen's letter also claims that Daniels had committed "improprieties spanning the most recent three year period." Yet she refers us to no evidence supporting her claim that this statement was truthful. Moreover, Daniels denied this claim in his deposition. Construing the designated evidence in the light most favorable to Daniels, we must conclude that there was at least a genuine issue of material fact regarding the truthfulness of Kathleen's statement in the letter that Daniels actions were inconsistent with the mediation agreement. The trial court therefore properly denied Kathleen's motions seeking judgment in her favor as a matter of law.

C. *Matters of Opinion*

Kathleen also argues that the other statements in her letter, including that Daniels's behavior was "unethical," "unprofessional," and "illegal," were simply matters of opinion that were not actionable defamation. While we agree that whether someone acted "professionally" might well be a matter of opinion, we cannot agree that the same holds true with regard to the use of the words "unethical" and "illegal." Accusing someone of unethical conduct is not merely stating a disagreement with the manner in which they behaved; it is an accusation that someone breached a code, written or

10

unwritten, of ethics. Similarly, saying that Daniels' behaved "illegally" is not a matter of opinion, but an accusation that he broke the law. Thus, the contents of Kathleen's letter were not purely matters of opinion, and the question of whether these accusations were true were issues of fact to be determined at trial. We therefore cannot agree with Kathleen that she was entitled to judgment as a matter of law.

## II. Qualified Privilege

Kathleen also claims that her statements in the letter were protected by a "qualified privilege." A qualified privilege applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. Williams, 914 N.E.2d at 762. In the context of defamation law, "good faith" has been defined as "'a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable.'" Nexus Grp., Inc. v. Heritage Appraisal Serv., 942 N.E.2d 119, 122 (Ind. Ct. App. 2011) (quoting Owens v. Schoenberger, 681 N.E.2d 760, 764 (Ind. Ct. App. 1997)).

As a defense to a claim of defamation, a qualified privilege does not operate to change the actionable quality of the words published, but merely to rebut the inference of malice that is otherwise imputed. Williams, 914 N.E.2d at 762. To merit the protection of a qualified privilege the defendant bears the initial burden to establish the existence of a privileged occasion for the publication, by proof of a recognized public or private interest which would justify the utterance of the words. Id. Once the defendant meets

11

this burden, the plaintiff then has the burden of overcoming that privilege by showing that it has been "abused." In this sense, the essence of the concept of "abuse" is not the speaker's spite but his abuse of the privileged occasion by going beyond the scope of the purposes for which privilege exists. Id.

A jury should determine as questions of fact whether a defendant acted in good faith, whether the privilege was abused by excessive publication, whether the defendant used the occasion for an improper purpose, or whether the defendant lacked grounds for belief in the truth of the statement. Cortez, 827 N.E.2d at 1234. If different inferences and conclusions could reasonably be drawn from the evidence, then the question of abuse of privilege must be submitted to the jury. Id.; see also Williams, 914 N.E.2d at 762 ("Unless only one conclusion can be drawn from the evidence, the question of whether the privilege has been abused is for the jury.") (quoting Kelley, 865 N.E.2d at 601).

Kathleen notes that she designated evidence indicating that she did act in good faith, i.e. she wrote the letter to inform authorities regarding what she believed to be Daniels's unethical and illegal behavior. This, she claims, is unrefuted evidence of her good faith. But Daniels notes that, given the timing of the various events at issue, and the content of the letter, and construing all reasonable inferences in his favor, there was a genuine issue of material fact regarding Kathleen's good faith. Given our standard of review, we must agree with Daniels.

Daniels did not violate a restraining order by transferring the $500,000, and the mediation agreement contains no explicit prohibition against transferring this money out of the particular A.G. Edwards account. Further, the letter accuses Daniels of printing

12

out "random reports" and generally being unhelpful during the mediation. It also vaguely accuses Daniels of other "improprieties" without further elaboration. Under these facts and circumstances, we must conclude that there was a genuine issue of material fact regarding whether Kathleen acted in good faith. See Kelley, 865 N.E.2d at 598 ("Whether a defendant acted in good faith in making a statement usually is a question of fact for the jury."). Therefore, the trial court properly concluded that Kathleen was not entitled to judgment as a matter of law on the issue of qualified privilege.

### III. Anti-SLAPP Statutes

Lastly, Kathleen claims that the trial court erred in denying her motion based on Indiana's Anti-SLAPP statutes. If a person files a motion to dismiss pursuant to Indiana's Anti-SLAPP statutes, the trial court shall treat the motion as a motion for summary judgment. Ind. Code § 34-7-7-9; Nexus, 942 N.E.2d at 122. Section 5 of the Anti-SLAPP Chapter provides in pertinent part:

> It is a defense in a civil action against a person that the act or omission complained of is:
> (1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue;[4] and
> (2) an act or omission taken in good faith and with a reasonable basis in law and fact.

Ind. Code § 34-7-7-5.

---

[4] As set forth in Indiana Code § 34-7-7-2, the phrase "act in furtherance of a person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue" is defined to include "any conduct in furtherance of the exercise of the constitutional right of: (1) petition; or (2) free speech; in connection with a public issue or an issue of public interest."

We have already determined above in our discussion regarding the qualified privilege that there was a genuine issue of material fact with regard to Kathleen's good faith. Because Kathleen's good faith is an element of her Anti-SLAPP motion, we also conclude that she was not entitled to dismissal of Daniels's defamation claims based on the Anti-SLAPP statutes. In short, the trial court properly denied Kathleen's motion to dismiss.

Affirmed.

ROBB, C.J., and BAILEY, J., concur.