

IN THE

# Court of Appeals of Indiana

Bridget A. King,

*Appellant-Defendant*



FILED

Feb 21 2024, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2007-4,

*Appellees-Plaintiffs*

---

February 21, 2024

Court of Appeals Case No.
23A-CC-1482

Appeal from the Marion Superior Court

The Honorable Ian L. Stewart, Magistrate

Trial Court Cause Nos.
49D05-1812-CC-50543
49D07-1812-CC-50545
49D07-1812-CC-50546
49D06-1812-CC-50571
49D04-1812-CC-50575
49D13-1812-CC-50587
49D06-1812-CC-50596

---

**Opinion by Judge Foley**
Judges Pyle and Tavitas concur.

**Foley, Judge.**

Bridget A. King ("Student") appeals the order granting summary judgment to the plaintiffs, National Collegiate Student Loan Trusts (collectively, "Creditor"),[1] on claims that Student was liable to Creditor on several student loans ("the Debt"). Student presents two issues, which we restate as follows:

> I. Whether Creditor designated inadmissible evidence in support of its motion for summary judgment; and

> II. Whether Student's designated evidence established a genuine issue of material fact regarding Creditor's right to collect on the Debt or whether Student was in default.

We affirm.

---

[1] Across various actions, the plaintiffs were National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2006-1, and National Collegiate Student Loan Trust 2007-4.

## Facts and Procedural History

[3] Creditor filed seven lawsuits claiming Student was in default on the Debt. The cases were consolidated, and Creditor eventually moved for summary judgment. In support, Creditor designated an affidavit ("the Affidavit") from Aaron Motin ("Motin"), who was employed by "the appointed [s]ubservicer" of the Debt, Transworld Systems Inc. ("TSI"). Appellant's App. Vol. 2 p. 68. The purpose of the Affidavit was to admit several attached loan documents, including documents that outlined Student's payment history and demonstrated that Student was in default. The evidence indicated that the Debt consisted of several loans for which JPMorgan Chase Bank, N.A. ("Chase") was the originator. The evidence further indicated that Chase pooled and sold the loans to National Collegiate Funding, LLC, which then sold the loans to Creditor.

[4] As to the attached records, the Affidavit indicated that some of the records were not created by Creditor or TSI. Rather, they "include[d] electronic data that prior servicers of the educational loan provided to TSI related to the educational loan," along with certain "business records[.]" *Id.* at 68.[2] The Affidavit collectively refers to the attachments as the "loan records," and specifies that the loan records "include loan origination documents [Creditor] obtained at acquisition." *Id.* at 69. Motin testified that the prior servicer of the loan was known as American Education Services ("AES"), and that AES

---

[2] Creditor designated an affidavit for each loan. Because the affidavits were substantially the same in all pertinent respects, we cite herein to a single affidavit.

"began servicing the [Debt] upon the first disbursement and continued to service the [Debt] until it was charged-off." *Id.* at 70. "Upon charge-off, the loan records were transmitted to and incorporated within the records of TSI (or its predecessor) as part of its regularly-conducted business practice," and TSI "began servicing the [Debt]." *Id.* Motin further averred that it was "TSI's regularly-conducted business practice to incorporate prior servicers' loan records into the system of record it maintains on [Creditor's] behalf when TSI assumes [the] role of [s]ubservicer." *Id.* at 69–70.

[5] Motin addressed the way in which AES created and maintained the loan records, testifying that he "ha[d] access to"—and "training and experience using"— "the system of record utilized by [AES] . . . to enter, maintain[,] and access the loan records during its role as servicer," and that he was "familiar with the transaction codes reflected in [AES] records." *Id.* at 69. Motin also addressed the way in which TSI obtained those records, testifying that he was "familiar with the process by which TSI receives access to loan records from [the] prior servicers and incorporates those records into TSI's system of record." *Id.* at 70. He testified that "the loan records were transmitted to and incorporated within the records of TSI (or its predecessor) as part of its regularly-conducted business practice" when it began servicing the Debt. *Id.*

[6] Motin testified that TSI "regularly relies upon these integrated loan records in performance of its services on behalf of [Creditor]." *Id.* He further testified that the loan records, "including records entered and maintained by AES," were created, compiled or recorded, and kept as part of regularly conducted business

activity at or near the time of the event recorded." *Id.* Moreover, Motin averred that the loan records "were created, compiled[,] or recorded from information transmitted by a person with personal knowledge of such event who had a business duty to accurately report it, from information transmitted by a person with personal knowledge of such event," and that "[s]uch records are created, kept[,] maintained, accessed[,] and relied upon in the course of ordinary and regularly conducted business activity." *Id.* at 70–71.

[7] Student filed a response asserting that the loan records could not be properly considered in ruling on summary judgment. Student specifically claimed that Motin lacked personal knowledge regarding the loan records, resulting in a deficient foundation such that the records constituted inadmissible hearsay.

[8] Student also designated evidence in response to summary judgment, asserting that the evidence created a genuine issue of material fact regarding whether Student was in default and whether Creditor actually controlled the Debt. The designated evidence included Student's own affidavit, which contained a statement that she "ha[d] no recollection of having ever made any of the payments . . . reflected in the[] account histories" depicted in the loan records. Appellant's App. Vol. 4 p. 84. Student also provided five documents that appear to be 1099-C tax documents ("the 1099s") that Chase—rather than Creditor—issued to Student or her co-signer. *See id.* at 85–89. The 1099s indicate that Chase discharged certain student loan debt in 2019. Each of the 1099s contains a different account number. Student's affidavit did not refer to the 1099s. However, Student did discuss the 1099s in her briefing on summary

judgment. Although the 1099s contain account numbers, Student did not address in briefing how those account numbers correspond to the Debt.

[9] The trial court granted summary judgment to Creditor. Student moved to correct error, and the trial court denied the motion. Student now appeals.

## Discussion and Decision

[10] Student appeals the denial of her motion to correct error, which was directed toward the ruling on summary judgment. Under the circumstances, we apply the standard of review for the underlying ruling on summary judgment. *See generally, e.g.*, *Rotert v. Stiles*, 174 N.E.3d 1067, 1069 (Ind. 2021). We review the trial court's ruling on summary judgment de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Moreover, we note that Creditor did not timely file an appellate brief. In this scenario, we need not develop an argument on Creditor's behalf and will instead reverse upon a showing of prima facie error. *See Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014). Prima facie error means error "at first sight, on first appearance, or on the face of it." *Id.* (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)).

[11] Under Indiana Trial Rule 56(C), a party moving for summary judgment "shall designate to the court all . . . matters on which it relies for purposes of the motion." At that point, "[a] party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment," along with "the evidence relevant thereto." Ind. Trial Rule 56(C). In sum, the initial burden is on the movant to demonstrate the

absence of a genuine issue of material fact. *Hughley*, 15 N.E.3d at 1003. If satisfied, "the burden shifts to the non-movant to 'come forward with contrary evidence' showing an issue for the trier of fact." *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009)). Summary judgment is proper only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C). "To the extent we 'have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party.'" *Z.D. v. Cmty. Health Network, Inc.*, 217 N.E.3d 527, 532 (Ind. 2023) (quoting *Reed v. Reid*, 980 N.E.2d 277, 303 (Ind. 2012)).

## I. The Affidavit

[12] Trial Rule 56(E) governs affidavits submitted on summary judgment, providing that "[s]upporting and opposing affidavits . . . shall set forth such facts as would be admissible in evidence[.]" As for admissibility, Indiana Evidence Rule 602 contains a personal knowledge requirement, specifying that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[3] Moreover, Evidence Rule 802 generally prohibits the admission of hearsay evidence, providing that "[h]earsay is not admissible unless these rules or other law provides otherwise."

---

[3] Trial Rule 56(E) also provides that a designated affidavit "shall be made on personal knowledge[.]"

"Hearsay" means a statement that was "not made by the declarant while testifying" that is "offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). There are several exceptions to the rule against hearsay. *See generally* Evid. R. 803. One exception is for a record of a regularly conducted activity. *See* Evid. R. 803(6). This exception applies to "[a] record of an act, event, condition, opinion, or diagnosis" so long as certain foundational requirements are met. *Id.* These foundational requirements are as follows:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[14] Student argues that the Affidavit was deficient because it "fail[ed] to indicate that Motin was familiar with or had personal knowledge of the regular business practices or record keeping of Chase, [t]he loan originator." Appellant's Br. p. 17. Student asserts that "Motin never worked for the loan originator (i.e.,

Chase) and, therefore, ha[d] no personal knowledge of the initial [c]ontracts upon which the debts were allegedly initiated." *Id.* Student further asserts that Motin "could not have personal knowledge of the original [c]ontracts . . . and the transfer of the [D]ebt[]" to Creditor. *Id.* at 16.

[15] Student directs us to *Holmes v. National Collegiate Student Loan Tr.*, 94 N.E.3d 722, 724 (Ind. Ct. App. 2018), where we reversed summary judgment due to a deficient affidavit. There, as in this case, the plaintiff had obtained the right to repayment of student loans. In seeking summary judgment, the plaintiff designated an affidavit prepared by an employee of its subservicer—TSI—"to authenticate and lay the foundation for the admissibility of several attached documents," including loan records transmitted to TSI. *Id.* Although the affiant testified to personal knowledge of TSI's business practices, we noted that "[t]here was no testimony to indicate that [the affiant] was familiar with or had personal knowledge of the regular business practices of [the loan originator] or that of [the plaintiff] regarding the transfer of pooled loans." *Id.* We also noted that "[t]here was no testimony to indicate that th[e] records were made at or near the time of the business activities in question by someone with knowledge, that the records were kept in the course of the regularly conducted activities of either [the originator] or [the plaintiff]," and "that making the records was part of the regularly conducted business activities of those third-party businesses." *Id.* Based on the limited scope of the affidavit—which generally spoke to TSI's business practices—we concluded that the "affidavit [was] insufficient to

support the admission of two of the business records necessary for [the plaintiff] to establish its prima facie case" on summary judgment. *Id.* at 726.

[16]    Later, in *Smith v. National Collegiate Student Loan Tr.*, 153 N.E.3d 222 (Ind. Ct. App. 2020), we affirmed summary judgment where the affiant testified about the accuracy and authenticity of loan records transmitted to TSI and incorporated into TSI's records. In addition to testimony that the affiant was "familiar with the process by which TSI and AES, on behalf of [the plaintiff], each receives loan records from the prior servicer or loan originator," the affiant testified:

> Educational loan records that are within TSI's care, custody[,] and control as [s]ubservicer for [the plaintiff], including records entered and maintained by AES . . . were created, compiled[,] or recorded, and kept as part of regularly conducted business activity at or near the time of the event recorded. The loan records were created, compiled[,] or recorded from information transmitted by a person with personal knowledge of such event who had a business duty to report it, from information transmitted by a person with personal knowledge of such event. Such records are created, kept, maintained, accessed[,] and relied upon in the course of ordinary and regularly conducted business activity.

*Smith*, 153 N.E.3d at 227. Notably, in this case, the Affidavit contains substantially similar testimony to the foregoing testimony from *Smith*.

> The records pertaining to the educational loan that are within TSI's care, custody[,] and control as [s]ubservicer for [the] [p]laintiff, including records entered and maintained by AES, as the [p]laintiff's prior servicer of the educational loan, were

created, compiled[,] or recorded, and kept as part of regularly conducted business activity at or near the time of the event recorded. The loan records were created, compiled[,] or recorded from information transmitted by a person with personal knowledge of such event who had a business duty to accurately report it, from information transmitted by a person with personal knowledge of such event. Such records are created, kept, maintained, accessed[,] and relied upon in the course of ordinary and regularly conducted business activity.

Appellant's App. Vol. 2 pp. 70–71.

[17] In evaluating the adequacy of the affidavit in *Smith*, we noted that, "[u]nlike the deficient affidavit . . . in *Holmes*," the affidavit at issue "demonstrated, from a source and circumstances that did not indicate a lack of trustworthiness" that the business records satisfied the hearsay exception for records of a regularly conducted activity under Evidence Rule 803(6). *Smith*, 153 N.E.3d at 227. We pointed to testimony that (1) the records were "made at, near the time, or from information transmitted by a person with knowledge; (2) the business records were kept in the course of regularly conducted activities of" the loan originator and/or the plaintiff; "and (3) the making of the business records was a regular practice of the business activities of [the loan originator], [the plaintiff], and their loan servicers and subservicers." *Id.* We also noted that the affidavit "established the manner in which [the loan at issue] was transferred to [the plaintiff]; and that [the affiant] was familiar with the regular business practices or recordkeeping of . . . TSI . . . as well as [the originator's] servicer, AES, regarding the transfer of pooled loans[.]" *Id.* Pointing out that the affiant in *Smith* "could testify as to the reliability and authenticity of th[e] documents,"

we ultimately identified an adequate foundation for considering the attached loan records under Evidence Rule 803(6). *Id.* Later, in *Akinlemibola v. National Collegiate Student Loan Tr. 2007-01*, we looked to *Smith* and concluded that a "similar" affidavit provided a sufficient foundation for considering student loan records transmitted to TSI. 205 N.E.3d 1014, 1017 (Ind. Ct. App. 2023).

[18] In alleging the Affidavit is deficient, Student chiefly relies on *Holmes*, declining to cite or attempt to distinguish more recent caselaw, which involved specific averments similar to the averments contained in the Affidavit. *See generally* Appellant's Br. pp. 16–17. Student focuses on whether the Affidavit indicates that "Motin was familiar with or had personal knowledge of the regular business practices or record keeping of Chase, [the] loan originator." *Id.* at 17. But, the Affidavit—like the affidavit in *Smith*—demonstrated, from a source and circumstances that did not indicate a lack of trustworthiness, that the loan records were "created, compiled[,] or recorded from information transmitted by a person with personal knowledge of such event who had a business duty to accurately report it, from information transmitted by a person with personal knowledge of such event"; and that "[s]uch records [were] created, kept, maintained, accessed[,] and relied upon in the course of ordinary and regularly

conducted business activity." Appellant's App. Vol. 2 pp. 70–71. And this testimony maps onto the foundational requirements of Evidence Rule 803(6).[4]

[19] Adhering to *Smith* and *Akinlemibola*, we identify a sufficient foundation to consider the loan records under the hearsay exception for records of a regularly conducted activity. Thus, we conclude that the trial court did not err in considering the challenged evidence when ruling on summary judgment.

## II. Student's Designated Evidence

[20] Student asserts that her designated evidence created a genuine issue of material fact precluding summary judgment. Her appellate arguments revolve around whether Creditor had the right to collect and whether Student was in default.

[21] At times, Student directs us to the 1099s, claiming these documents demonstrate that the Debt was "still owned by Chase even after" Creditor initiated this litigation. Appellant's Br. p. 17. Critically, however, Indiana Evidence Rule 901 requires the authentication or identification of "an item of evidence" and directs that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Yet, in opposing summary judgment, Student did not refer to the 1099s in her affidavit. Moreover, although the 1099s indicated that Chase discharged certain student

---

[4] To the extent Student suggests that, despite Motin's testimony, Motin could not have had personal knowledge of the third-party recordkeeping, Student had the opportunity to explore this issue by seeking discovery. *See* Ind. Trial Rule 56(E) (noting that, in summary judgment proceedings, "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.").

loans, Student did not link the 1099s to the Debt, whether by account number or otherwise. Under the circumstances, we conclude that Student cannot rely on the 1099s in claiming that the trial court erred in granting summary judgment to Creditor.

[22] We turn to Student's contention that she "designated evidence to dispute the account balances and payment histories" reflected in the loan documents. Appellant's Br. p. 17. Student focuses on her affidavit, wherein she testified to having "no recollection of having ever made any of the payments . . . reflected in th[e] account histories." Appellant's App. Vol. 4 p. 84. Student also said that she was not aware of any "financial records . . . that support [Creditor's] contention that any of these supposed payments were ever actually made[.]" *Id.*

[23] Student claims that these statements "contradic[t]" evidence of her payment history. Appellant's Br. p. 20. We disagree. Student's statements fail to contradict Creditor's designated evidence or offer proof of alternate payments or accounting of her loan balances. Rather, Student's statements indicate that she does not recall making payments and that she possessed no records that would contradict Creditor's accounting. Nonetheless, the germane issue is not whether Student actually "made any of the payments . . . reflected in th[e] account histories" but, instead, whether she failed to make loan payments when those payments were due—i.e., whether Student was liable to Creditor. Appellant's App. Vol. 4 p. 84. As the Indiana Supreme Court has explained, "[a] genuine issue of material fact exists when there is 'contrary evidence showing differing accounts of the truth,' or when 'conflicting reasonable

inferences' may be drawn from the parties' consistent accounts *and resolution of that conflict will affect the outcome of a claim*." *Z.D.*, 217 N.E.3d at 532 (emphasis added) (quoting *Wilkes v. Celadon Grp., Inc.*, 177 N.E.3d 786, 789 (Ind. 2021)). Here, Creditor's designated evidence indicated that Student was liable, and Student's affidavit does not create a genuine issue of material fact as to liability.

[24] All in all, Creditor met its burden on summary judgment by making a prima facie showing that it had the present right to collect on the Debt from Student. Although Student designated certain evidence in response, Student did not meet her burden of showing that there remained a genuine issue of material fact.

## Conclusion

[25] Summary judgment did not depend on inadmissible evidence. Moreover, Student has not established that there remained a genuine issue of material fact.

[26] Affirmed.

Pyle, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Adam J. Ruwe
Weltman, Weinberg & Reis Co., LPA
Cincinnati, Ohio